United States District Court
Southern District of Texas
ENTERED

JUL 1 9 2006

Michael N. Milby, Clerk of Court
By Deputy Clerk ⁓⁓⁓

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

ROBERT SCOTT HOWELL d/b/a    §
SOUTH COAST SPINE &    §
REHABILITATION and LETTY PEREZ,    §
Individually and on behalf of all    §
others similarly situated,    §
   §
         **Plaintiffs,**    §
   §
v.    §   CIVIL ACTION NO. B-06-75
   §
SOUTHWESTERN BELL TELEPHONE,    §
L.P. d/b/a AT&T TEXAS, JAN NEWTON,    §
ALFRED G. RICHTER, JR., DAN    §
KAESHOEFER, and JAMES E.    §
STIDHAM, JR.,    §
   §
         **Defendants.**    §

## OPINION & ORDER

BE IT REMEMBERED that on July _18_, 2006, the Court considered Defendant Southwestern Bell Telephone, L.P.'s Motion to Dismiss, Dkt. No. 8, and Individual Defendants' Motion to Dismiss, Dkt. No. 10.

### I.      Background

#### A. Factual

In an effort to ensure adequate access to telephone communications for all individuals, including persons who are handicapped or who reside in rural areas, Congress has required all telecommunications carriers who provide interstate and/or international services to pay a portion of their revenues to the Federal Universal Service Fund ("FUSF").  *See* Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified in scattered sections of 47 U.S.C.).  Congress also permitted the states to require carriers of intrastate calls to contribute to state universal service funds; under this authority, Texas has created the Texas Universal Service Fund ("TUSF").  *See id.*;

-1-

*see also* AT&T Corp. v. Pub. Util. Comm'n of Tex., 373 F.3d 641, 643 (5th Cir. 2004).

Southwestern Bell Telephone, L.P. ("SWBT") is a Texas Limited Partnership that provides both local and long-distance telephone services and is therefore subject to both the FUSF and the TUSF. Dkt. No. 1, at 2, 3; 47 U.S.C. § 254 (2005); 16 TEX. ADMIN. CODE § 26.401 (2005); TEX. UTIL. CODE § 56.021 (2005). The interstate service provided by SWBT is charged to its customers under the title "End User Common Line (EUCL) charge." Dkt. No. 8, at 4; Trevino v. Sw. Bell Tel. Co., No. Civ.A. M-04-377, 2005 WL 2346950, *2 (S.D. Tex. Sept. 26, 2005).

Furthermore, SWBT is subject to 47 U.S.C. § 203(a), which requires a carrier to file rates for each of its services with the Federal Communications Commission ("FCC"). SWBT is prohibited from charging a price that varies from this federally filed tariff. *See* 47 U.S.C. § 203(c) (2005).

Plaintiffs, a Texas business and an individual resident of the State of Texas, bring suit on behalf of themselves and a purported class of similarly situated businesses and individuals in the State of Texas. Dkt. No. 1, at 1, 2. As noted above, Defendant SWBT is a telecommunications company providing both local and long-distance telephone services. *Id.* at 2, 3. Defendants Jan Newton, Alfred G. Richter, Jr., Dan Kaeshoefer, and James E. Stidham, Jr. ("Individual Defendants") are officers and/or directors of SWBT. *Id.* at 2–3. Plaintiffs allege "that SWBT collected a Texas Universal Service Fund ('TUSF') surcharge in connection with interstate telecommunication services," that "this charge or practice was not contained in its Federal Tariff," and that this charge constitutes an "overcharge." *Id.* at 4, 9. Based on these allegations, Plaintiffs assert five causes of action: violation of the Federal Communications Act ("FCA"), unjust enrichment, breach of contract, breach of SWBT's refund policy, and conversion.[1] *Id.* at 10–13.

---

[1]The section of Plaintiffs' complaint entitled "Causes of Action" only contains four counts. Dkt. No. 1, at 11–13. As will be discussed below, however, Plaintiffs sufficiently plead a cause of action for conversion in the "Facts" section of their complaint. *Id.* at 10; *see also infra* n. 3.

-2-

## B. Procedural

Procedurally, this case has arisen out of the proceedings in *Trevino v. Southwestern Bell Telephone Co., L.P.* That case, which has a long procedural history which will not be delved into at this time, came before this Court last year. *Trevino*, 2005 WL 2346950. The Court remanded *Trevino* to state court on September 26, 2005. *Id.* at 2. Currently, that case is stayed pursuant to an order of the Texas Supreme Court. Dkt. No. 8, at 1.

More specifically, this case was born out of the order remanding *Trevino* to state court, and there is, unsurprisingly, a great deal of similarity between the two cases. *Trevino*, 2005 WL 2346950. Both cases involve the same attorneys, include SWBT as a Defendant, have similar proposed classes of Plaintiffs, and encompass analogous claims.[2] *Compare* Dkt. No. 1, *with Trevino*, No. Civ.A. M-04-377 (Plaintiffs' Fourth Amended Original Petition). The parties' filings in this case also reflect its genesis, as they make frequent references to the remand order in *Trevino*. *See, e.g.*, Dkt. No. 1, at 6; Dkt. No. 8, at 5; Dkt. No. 12, at 1. Nonetheless, there is one significant difference between *Trevino* and the case *sub judice*: in *Trevino*, the Plaintiffs brought five causes of action under state law and expressly disclaimed any remedies they may have under federal law, but in this case the Plaintiffs specifically assert causes of action under federal law. *See* Dkt. No. 1, at 11–13; *Trevino*, 2005 WL 2346950, at *1. In essence, this case is a federal clone of the original state law-based *Trevino*.

Plaintiffs gave life to this case by alleging that SWBT has illegally imposed a TUSF surcharge on the EUCL charge, because this surcharge was not included in SWBT's federally filed tariff. Dkt. No. 1, at 4. Plaintiffs further contend that this surcharge constitutes an "overcharge" under 47 U.S.C. § 203(c). *Id.* at 9. Finally, Plaintiffs aver that, according to this Court's remand order in *Trevino*, "the only question left to be resolved is the factual issue of whether SWBT collected this illegal charge." *Id.* at 6.

---

[2]The claims in these two cases can be analogized to the faces of a coin: this case is one face and the state case is the other. Although they look different, they amount to the same thing.

-3-

In response to the Plaintiffs' allegations, both SWBT and the Individual Defendants filed Motions to Dismiss. Dkt. Nos. 8, 10. Defendant SWBT argues that this case "is simply an attempted end run around" the stay imposed by the Texas Supreme Court in the *Trevino* case. Dkt. No. 8, at 2. SWBT therefore concludes that the Court should abstain from hearing the case, pursuant to *Burford v. Sun Oil Co*. *Id.* at 6. The Individual Defendants move for dismissal on the basis that the Plaintiffs failed to state a valid claim against them. Dkt. No. 10, at 1. These Defendants aver that they cannot be held personally liable for breach of contract actions so long as they were acting within the scope of their employment, they cannot be held liable in tort for mere nonfeasance, they were not actually named in any of the Plaintiffs' causes of action, they are not common carriers, they had no contracts with the Plaintiffs, they have not been unjustly enriched, and they cannot be held liable for tort claims that the Plaintiffs failed to actually assert. *Id.* at 2–9.

Plaintiffs responded to the Defendants' motions on June 6, 2006. Dkt. No. 12. Plaintiffs state that they filed this case as a result of "dilatory tactics" by the Defendants: "[s]ince SWBT continues its efforts to deny Plaintiffs their rightful refund, Plaintiffs refiled their case in federal court to put this sole factual issue squarely before the Court." *Id.* at 1, 4. Plaintiffs also contend that they filed this case because Defendant SWBT "requested mandamus relief from the Texas Supreme Court, although it clearly is not entitled to such extraordinary relief." *Id.* at 3. Furthermore, Plaintiffs aver that because they are asserting claims under both federal and state law, they should not be forced to submit their claims to a state administrative agency. *Id.* at 10. Finally, Plaintiffs argue that the case should survive Defendants' motions because monetary damages cannot be awarded by the Texas Public Utility Commission ("PUC") and are not subject to the *Burford* doctrine. *Id.* at 12.

## II.    Standard for Motion to Dismiss

A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted." Kennedy v. Tangipahoa Parish Library Bd. of Control, 224 F.3d 359, 365 (5th Cir. 2000); Lowrey v. Texas A & M Univ. Sys., 117 F.3d 242, 247(5th Cir. 1997)

(quoting Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982)).  Fifth Circuit law dictates that a district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *See* Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996); *see also* Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).  A complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45–46 (1957); *see also* Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constr., Inc., 804 F.2d 879, 881 (5th Cir. 1986).  The Fifth Circuit has held, however, that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief."  Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted).

## III.    Analysis

Both the Individual Defendants and SWBT move to dismiss this case.  Dkt. Nos. 8, 10.  The Individual Defendants move for dismissal for failure to state a claim upon which relief can be granted and also join SWBT's motion.  Dkt. No. 10, at 1.  SWBT moves for dismissal based on abstention under the *Burford* doctrine.  Dkt. No. 8, at 2, 6.  The Court will first consider the Individual Defendants' separate grounds and then will consider SWBT's motion.

### A. Individual Defendants

The Individual Defendants' assertions for why they should be dismissed from this case can be separated into two primary arguments.  First, they argue that they cannot be held liable for any of the claims asserted by Plaintiffs.  Dkt. No. 10, at 2–5, 6–9. Second, they aver that Plaintiffs failed to actually allege any causes of action against them.  *Id.* at 5–6.  The Court will consider both of these arguments in turn.

i. Asserted Causes of Action

The Individual Defendants' first basis for their motion to dismiss is that they

-5-

cannot be liable under any of the causes of action asserted by the Plaintiffs. *Id.* at 2–5, 6–9. They contend that Plaintiffs did not actually bring any tort causes of action, that all of the causes of action asserted are based upon contract theories, and that they cannot be liable for claims derived from contractually-based causes of action. *Id.* The Individual Defendants also state that, even if any tort causes of action had been brought, they cannot be liable for nonfeasance. *Id.* at 4–5.

Plaintiffs proffer several responses to these arguments. First, Plaintiffs state that the Individual Defendants "were on formal notice . . . that a conversion had occurred" and that "they have knowingly and actively participated in converting money from SWBT customers." *Id.* at 15, 16. Second, Plaintiffs contend that a "corporate officer or agent can be held individually liable if he or she knowingly participates in the conduct or has actual or constructive knowledge of the tortious conduct," that the Individual Defendants had actual knowledge of wrongful conduct and failed to correct it, and that they actively helped SWBT convert money from its customers. *Id.* at 16–17. Finally, Plaintiffs argue that the Individual Defendants did not act in good faith in this case and that corporate officers can be held liable for contractual causes of action if they do not act in good faith. *Id.* at 17 ("The conduct of the Individual Defendants in this case was not in the best interest of SWBT, in fact, it was criminal.").

The Court finds that the Plaintiffs cannot assert their contractual or quasi-contractual claims against the Individual Defendants. Corporate officers and directors are only liable for breaches of contract by their employers in very limited circumstances. "Courts will not disregard the corporate fiction and hold individual officers, directors or stockholders liable on the obligations of a corporation except where it appears that the individuals are using the corporate entity as a sham to perpetrate a fraud, to avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations." Pace Corp. v. Jackson, 284 S.W.2d 340, 351 (Tex. 1955); *see also* Maxey v. Citizens Nat'l Bank of Lubbock, 507 S.W.2d 722, 725–26 (Tex. 1974); Bell Oil & Gas Co. v. Allied Chem. Corp., 431 S.W.2d 336, 340 (Tex. 1968); Pabich v. Kellar, 71 S.W.3d 500, 507 (Tex. App. 2002). Plaintiffs fail to allege any of these circumstances or situations. Therefore, the Court concludes that the breach of contract, unjust enrichment, and

-6-

breach of refund policy claims are not valid as against the Individual Defendants.

The FCA claim also cannot be asserted against the Individual Defendants.  The explicit language of the statute refers to liability of "common carriers" for violations of the FCA.  *See* 47 U.S.C. §§ 203(c), 207 (2005).  The Individual Defendants are not common carriers.  *See* 47 U.S.C. § 153(10).  Therefore, this claim cannot apply to the Individual Defendants.

There are, however, material questions of fact pertaining to the Plaintiffs' claim for conversion.[3]  If the Individual Defendants "knowingly participate[d] in the conduct or ha[d] knowledge of the tortious conduct, either actual or constructive," then they may be liable for the tort.  Portlock v. Perry, 852 S.W.2d 578, 582 (Tex. App. 1993).  The record does not conclusively establish whether or not the Individual Defendants participated in or knew about the tortious conduct, or even whether any tortious conduct occurred.  Thus, dismissal of the conversion claim would be inappropriate on this basis.

## ii. Allegations Against Individual Defendants

The Individual Defendants' second basis for dismissal is that the Plaintiffs failed to assert any claims against them.  Dkt. No. 10, at 5–6.  The Individual Defendants state that "[n]one of the Individual Defendants are even mentioned once in any of the allegations setting forth the four causes of action."  *Id.* at 5.  Plaintiffs did not respond to this contention.

The Court finds that the only cause of action actually asserted against the Individual Defendants is the claim for conversion.  The remaining four causes of action, for violation of the FCA, unjust enrichment, breach of contract, and breach of refund policy, are all solely alleged against SWBT.  Dkt. No. 1, at 11–13.  Therefore, the only pending claim against the Individual Defendants is the claim for conversion.

---

[3]Although Plaintiffs did not specifically enumerate a cause of action for conversion in their complaint, they did allege tortious conduct by SWBT and participation in and knowledge of that conduct by the Individual Defendants.  Dkt. No. 1, at 10.  This is sufficient, under the notice pleading standard, to establish a claim for conversion against the Individual Defendants.

### B. Southwestern Bell Telephone, L.P.

Defendant SWBT relies exclusively on one basis for its motion to dismiss: the Court should abstain from hearing this case under the *Burford* doctrine. Dkt. No. 8, at 6. The Individual Defendants also join in this motion. Dkt. No. 10, at 1. The Court will therefore begin this section by considering this argument.

The Court, acting *sua sponte*, will also consider other possible bases for dismissing this action. The Court is a court of limited jurisdiction and therefore must constantly assess whether or not it has jurisdiction over actions pending before it. Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908). Thus, the Court will consider whether it has jurisdiction to consider this matter and, if so, whether it should exercise that jurisdiction. *See* Burford v. Sun Oil Co., 319 U.S. 315, 318 (1943).

### i. Abstention

Defendant SWBT moves the Court to dismiss, or at least to stay, this case based on the *Burford* doctrine of abstention. Dkt. No. 8, at 2. SWBT thereby argues that the Court should either dismiss these proceedings in favor of the state court case or at least postpone them until the state court case is complete.

"[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996). The doctrine of abstention is a narrow exception to this duty of federal district courts to exercise their jurisdiction. *Id.*; Colorado River Water Cons. Dist v. United States, 424 U.S. 800, 813 (1976) [hereinafter "Colorado River"]. Thus, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813. The decision of a district court to abdicate its obligation to exercise jurisdiction must be justified by "an important countervailing interest." *Id.* (quoting County of Alleghany v. Frank Mashuda Co., 360 U.S. 185, 188–89 (1959)). Furthermore, this determination is made after answering one primary question: "Assuming that [the Court] ha[s] jurisdiction, should it, as a matter of sound equitable discretion, [decline] to exercise that jurisdiction here?" *Burford*, 319 U.S. at 318.

Here, there is a state court proceeding that is contemporaneous with a federal

court proceeding. The state court case involves the same issues as the case *sub judice*.[4] Therefore, this Court will first consider SWBT's contention that the Court should abstain pursuant to the *Burford* doctrine and then will consider whether the case should be stayed or dismissed based on any other possible grounds for abstention.

    a. Under *Burford*

Defendant SWBT moves the Court to abstain from hearing this case based on the doctrine of *Burford* abstention. Dkt. No. 8, at 6. This doctrine states that state problems are best left to the state to resolve. Therefore, "*Burford* allows a federal court to dismiss a case only if it presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or if its adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Quackenbush*, 517 U.S. at 726–27 (quoting New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 361 (1989) [hereinafter "NOPSI"]). The primary consideration when evaluating whether to abstain pursuant to *Burford*, however, is "whether the plaintiff's claim may be 'in any way entangled in a skein of state law that must be untangled before the federal case can proceed.'" Sierra Club v. City of San Antonio, 112 F.3d 789, 795 (5th Cir. 1997) (quoting *Quackenbush*, 517 U.S. at 727).

There are five factors to evaluate in making a *Burford* determination: "(1) whether the cause of action arises under state or federal law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in the area; and (5) the presence of a special state forum for judicial review." Koerner v. Garden Dist. Assoc., 78 Fed. App'x 960, 963 (5th Cir. 2003). Each of these factors will be considered.

---

    [4]For example, an important issue in both cases is the factual question of whether SWBT imposed a TUSF charge on the EUCL.

1) Arising Under State or Federal Law

Plaintiffs assert a total of five causes of action in their Original Class Action Complaint: conversion, violation of the FCA, unjust enrichment, breach of contract, and breach of refund policy. Dkt. No. 1, at 10–13. Thus, the Court must determine under what law each of these claims arises.

Two of the Plaintiffs' causes of action, for unjust enrichment and conversion, arise under state law. Both of these causes of action are created by state common law and neither involves a substantial, disputed question of federal law. See Willy v. Coastal Corp., 855 F.2d 1160, 1168 (5th Cir. 1988); Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 391 (Tex. 1997); Leal v. Weightman, No. 01-03-01006-CV, 2004 WL 2251570, *4 (Tex. App. Oct. 7, 2004). Therefore, these claims are state, and not federal, in nature. See Willy, 855 F.2d at 1168.

The other three causes of action, however, arise under federal law. The first claim, violation of the FCA, is clearly a federal cause of action. The FCA is a federal statute. See, e.g., 47 U.S.C. § 203 (2005). Therefore, the right being asserted by the Plaintiffs is created by a federal statute, as is the right to file suit. See 47 U.S.C. §§ 203(c), 207 (2005). This presents the most basic method by which a claim can arise under federal law. See Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916), overruled by Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 8–9 (1983).

The other two federal causes of action are for breach of contract and breach of refund policy. These types of claims generally arise under state, not federal, law. In this case, however, the contract alleged to have been breached was created by a federally filed tariff. See 47 U.S.C. § 203(a) (2005); Cahnmann v. Sprint Corp., 133 F.3d 484, 487 (7th Cir. 1988). By alleging a violation of the terms of the contract, which Plaintiffs do in both the breach of contract and breach of refund policy claims, Plaintiffs assert claims which require the interpretation of terms of a federal contract. See Cahnmann, 133 F.3d at 487; Amoco Chem. Co. v. Tex Tin Corp., 902 F. Supp. 730, 735 (S.D. Tex. 1995). Thus, these claims also arise under federal law. See Willy, 855 F.2d at 1168.

-10-

2) Issues of State Law and Local Facts

This case involves only relatively straightforward application of established state laws. The state law claims are for conversion and unjust enrichment. Both of these claims are well-established in Texas jurisprudence, and the issues presented by this case do not pose any unsettled issues that need to be resolved. Furthermore, this case does not encompass any highly local issues of fact. *See* Wilson v. Valley Elec. Membership Corp., 8 F.3d 311, 315 (5th Cir. 1993).

3) Importance of the State Interest

"[U]tility regulation 'is one of the most important of the functions traditionally associated with the police power of the States.'" *Id.* (quoting *NOPSI*, 491 U.S. at 365). Thus, this case seemingly presents issues of great importance to Texas. The utility at issue, however, is subject to both federal and state regulation. *See, e.g.*, 47 U.S.C. § 203(a) (2005). Furthermore, the main question posed in this case is whether SWBT violated federal law by imposing an overcharge on the Plaintiffs.[5] Thus, the federal court's interest in adjudicating this case appears to be greater than any interest the Texas courts may have.

---

[5]The Defendants may attempt to raise compliance with the regulations issued by PUC as a defense, thereby creating an issue involving state law. This possibility does not effect the analysis here, however, because the potential that a defense may be asserted is not definite enough to raise a substantial state interest.

Furthermore, even if Defendants rely on the PUC's regulations, the issue would be whether an invalid state law can shelter a Defendant from a federal violation. *See* Howlett v. Rose, 496 U.S. 356, 371, 375–76 (1990); Ex Parte Edward T. Young, 209 U.S. 123, 159–60 (1908); Rosenfeld v. S. Pac. Co., 444 F.2d 1219, 1225, 1227 (9th Cir. 1971); Westendorp v. Ind. Sch. Dist. No. 273, 131 F. Supp. 2d 1121, 1127, 1128 (D. Minn. 2000); Equal Employment Opp. Comm'n v. County of Alleghany, 519 F. Supp. 1328, 1335 n.19 (W.D. Pa. 1981); Garneau v. Raytheon Co., 323 F. Supp. 391, 392 (D. Mass. 1971). There is no reason, however, to believe that a state court would be any better suited to the determination of that decision than a federal court.

Of course, the Court makes no determination of, and has not considered, whether that possible defense is viable or valid.

-11-

### 4) State Need for a Coherent Policy

The outcome of this case will have no impact on the coherency of Texas' policy in regulating telecommunications providers. The only regulatory policy that may be an issue in this case is the regulation by the PUC requiring/authorizing telecommunications providers to impose TUSF charges on interstate and international calls. That policy, however, has already been struck down by the Fifth Circuit in *AT&T Corp. v. Public Utility Commission of Texas*, 373 F.3d 641, 643 (5th Cir. 2004). Thus, Texas' regulatory policy will not be impacted by this case.

### 5) Presence of a Special State Forum

The PUC may present a special state forum for adjudication of claims related to the regulation of telecommunications providers. The propriety of asserting these types of claims in the PUC is currently being considered by the Texas Supreme Court. Dkt. No. 8, at 13. Therefore, it is unclear whether there is a special state forum in Texas or not.

### 6) Conclusion

Based on the analysis of the five factors for *Burford* abstention, the Court concludes that abstention on this basis would not be proper. Therefore, Defendants' motion to dismiss based on *Burford* fails.

### b. Under *Younger*

Although abstention is the exception and not the rule, the doctrine created by *Younger v. Harris*, 401 U.S. 37 (1971), presents a somewhat contrary directive. *Younger* instructs federal courts to avoid, insofar as possible, interfering with proceedings in state courts. *See Younger*, 401 U.S. at 43. "What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of

-12-

the States." *Id.* at 44.

Based on notions of comity and respect for state functions, *Younger* requires abstention when adjudication by a federal court "'would necessarily determine the same questions . . . as are at issue' in the pending state proceedings." Sable Comm'ns of Cal. v. Pac. Tel. & Tel. Co., 890 F.2d 184, 190 (9th Cir. 1989) (quoting Feaster v. Miksch, 846 F.2d 21, 22 (6th Cir. 1988)).  More specifically, "abstention is appropriate in favor of a state proceeding if (1) the state proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to raise federal questions."  Beltran v. State of California, 871 F.2d 777, 781 (9th Cir. 1988).  Based on these tests, *Younger* abstention is appropriate in this case.

### 1) Questions at Issue

Under the broad test, abstention is appropriate if adjudication of the case in federal court would necessarily require determination of the same issues as those pending in the state court.  Here, the issues to be resolved are whether SWBT imposed charges on its customers that were not contained in its federally filed tariff and, if so, whether SWBT has any defenses to this conduct.  These are the same issues that are pending before the Texas state court. *See Trevino*, 2005 WL 2346950, at *8 n.7. Therefore, abstention is appropriate under the broad *Younger* test.

### 2) Three Factors

Under the more specific test, the federal court should abstain if there are ongoing state proceedings implicating important state interests in which the federal questions could be raised.  In this case, all of these criteria are met.

First, there clearly are ongoing state proceedings. Dkt. No. 12, at 3.  Both of the parties make frequent reference to the state court case. *See id.*; *see also* Dkt. No. 1, at 6; Dkt. No. 8, at 1.  Furthermore, the case has already been presented to this Court, at which time it was remanded to state court. *See Trevino*, 2005 WL 2346950.  Thus, the first element is satisfied.

Second, although the federal case does not implicate important state interests,

-13-

*see supra*, the pending case in state court does involve important state interests. The state case contains allegations under state law which assert that SWBT breached its contracts with Texas residents, that SWBT was unjustly enriched at the expense of Texas residents, and that SWBT deceived Texas residents. *See Trevino*, No. Civ.A. M-04-377 (Plaintiffs' Fourth Amended Original Petition). Texas has an important interest in protecting its residents from this type of conduct. *See, e.g.*, BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 568–69 (1996). Therefore, the second element is also satisfied.

Finally, the state court provides a forum in which the federal questions could be raised. State courts are obligated to entertain federal claims if they hear similar state law claims. *See* Testa v. Katt, 330 U.S. 386, *passim* (1947). The federal causes of action in this case are analogous to the state law claims in the state case. *Compare Trevino*, No. Civ.A. M-04-377 (Plaintiffs' Fourth Amended Original Petition), *with* Dkt. No. 1. The state court was therefore required to permit the federal claims to be asserted. Furthermore, the Plaintiffs acknowledged that the state court could adjudicate the federal claims by including an express disclaimer of those claims in its original state court petition.[6] *See Trevino*, 2005 WL 2346950, at *1. This satisfies the third element, thereby fulfilling all of the prerequisites for application of *Younger* abstention.

### c. Under *Colorado River*

Additional concerns, beyond comity and respect for state functions, also must be taken into account when determining whether to abstain from adjudicating a case. *See Colorado River*, 424 U.S. at 817. "These principles rest on considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952)). Although these considerations ordinarily do not prevent federal courts from having jurisdiction over cases even if there is a pending

---

[6]The inclusion of an express disclaimer displays a belief that such a disclaimer is necessary to prevent the state court from having jurisdiction over the claims, thereby implying that the claims would be viable in state court without such a disclaimer.

state court case involving the same subject matter, the Supreme Court made clear, in *Colorado River Water Conservation District v. United States*, that circumstances do exist in which concurrent state court proceedings necessitate dismissal because of wise judicial administration. *Id.*

Factors that may be taken into account include "the inconvenience of the federal forum," "the desirability of avoiding piecemeal litigation," and "the order in which jurisdiction was obtained by the concurrent forums." *Id.* at 818. Furthermore, federal courts may abstain from adjudicating "cases which are duplicative of a pending state proceeding." *Quackenbush*, 517 U.S. at 717; *see also* Alabama Pub. Serv. Comm'n v. S. Ry. Co., 341 U.S. 341, 345 (1951).

Based on these factors, the Court should abstain from adjudicating this case. By bringing some claims in federal court and some claims in state court, the Plaintiffs are engaging in piecemeal litigation. The state court had jurisdiction over its case well before this case was filed. This case is duplicative of the state court case — the cases revolve around the same issues and would generate the same relief for the Plaintiffs. *See, e.g.*, Dkt. No. 12, at 1 ("Plaintiffs refiled their case in federal court . . . ."). Finally, the factor which clearly tilts the balance of interests against exercising jurisdiction and makes this case "exceptional" is the procedural posture of this case. Plaintiffs brought the case in state court, Defendants removed to federal court, Plaintiffs moved for remand, this Court remanded the case to state court, and the case was stayed by the Texas Supreme Court. *See Trevino*, 2005 WL 2346950, at *1, *10; Dkt. No. 8, at 1. Plaintiffs then brought a second action involving the same conduct and the same claims in federal court.[7] Dkt. No. 1; Dkt. No. 12, at 1. This procedural history shows that this is not a case in which federal court review is being blocked by the simple act of filing a suit in state court. *See* CHEMERINSKY, FEDERAL JURISDICTION 851 (4th ed. 2003). Rather, this is a case in which the party attempting to assert federal jurisdiction has already asserted, and defended the right to assert, state jurisdiction. *See Trevino*, 2005 WL

---

[7]The Court recognizes that there may be a slight difference in the purported Plaintiffs' classes in the two cases. Any variation does not impact this analysis, however. *See infra* § III.B.ii.

-15-

2346950, at *1.  It would be wasteful and improvident for this Court to retain jurisdiction over a case when the party asserting federal jurisdiction has already successfully argued against that jurisdiction; in other words, this Court will not duplicate state court proceedings when the Plaintiffs have already rejected the opportunity to present the issues and arguments to this Court.

Furthermore, common sense and the constraints and procedural requirements of the judicial system confirm that it would be inappropriate for the Court to retain jurisdiction over this case.  Both lawyers and courts are obliged to abide by ethical and procedural guidelines.  *See, e.g.*, FED. R. CIV. P. 11(b); MODEL RULES OF PROF'L CONDUCT R. 3.1 (2004).  When initiating a proceeding, lawyers may not have an improper purpose and must have a non-frivolous basis in law and fact for bringing the proceeding.  FED. R. CIV. P. 11(b); MODEL RULES OF PROF'L CONDUCT R. 3.1 (2004). "Lawyers' duties are found . . . in courtesy, common sense and the constraints of the judicial system," and one of these duties is "not to abuse legal procedure."  7 C.J.S. *Attorney & Client* § 43 (2006) (citing Smith v. Johnston, 711 N.E.2d 1259, 1263–64 (Ind. 1999)); MODEL RULES OF PROF'L CONDUCT R. 3.1 cmt. (2004).  In this case, Plaintiffs' counsel have specifically represented to this Court that their clients were disclaiming any federal causes of action that they might have.  *See Trevino*, 2005 WL 2346950, at *1, *10.  Plaintiffs are now attempting to assert federal jurisdiction on the basis of those same claims.  Dkt. No. 1., at 11–13.  These actions approach the border between ethical and unethical conduct, in that Plaintiffs' counsel have previously disclaimed the bases for federal jurisdiction that they are now relying on,[8] and they come dangerously close to abusing legal procedures by filing the federal court complaint.  *See, e.g.*, *In re* Oliver, 729 N.E.2d 582, 585 (Ind. 2000); *In re* Sarelas, 277 N.E.2d 313, 318 (Ill. 1971).  Moreover, it is a matter of common sense that the same party who defeated federal jurisdiction by disclaiming federal claims cannot later rely on those claims to establish federal jurisdiction.  These are inconsistent arguments and

---

[8]Plaintiffs' counsel's reliance on causes of action which have previously been disclaimed poses questions of whether the action was brought for an improper purpose and whether they have a non-frivolous basis for the claims asserted.

representations and proper legal procedure will not permit this conduct. Therefore, the Court will not implicitly condone this conduct, and it would not comport with wise judicial administration for the Court to retain jurisdiction over this case. However, because it is questionable whether the conduct of the Plaintiffs' attorneys amounts to a violation of their ethical obligations, the Court will err on the side of leniency and will not consider the imposition of sanctions or the initiation of proceedings to investigate whether this conduct violated any ethical requirements.

Nonetheless, the Court concludes that wise judicial administration requires abstention in this case.

ii. Disclaimed Causes of Action and Res Judicata

Although the Defendants do not raise the issue, the Court finds it appropriate to consider, *sua sponte*, whether it has subject matter jurisdiction over this case. The Court raises this issue out of concern that the federal causes of action asserted by Plaintiffs are barred by res judicata. *See* BLACK'S LAW DICTIONARY 1336–37 (8th ed. 2004). If these claims are barred, they are not viable. If there are no viable federal causes of action, then the Court lacks subject matter jurisdiction over the case.[9] *See* 28 U.S.C. § 1331 (2005); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725–26 (1966). If the Court lacks subject matter jurisdiction, the case must be dismissed.[10] *See* Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984). Therefore, the Court must determine if there are any viable federal causes of action.

As an initial matter, the Court notes that the plaintiffs in the state court case expressly disclaimed any federal causes of action. *See Trevino*, 2005 WL 2346950, at *1. "By choosing to eschew claims based on federal law in order to avoid removal to

---

[9]It is undisputed that diversity jurisdiction does not exist in this case, because the parties are not diverse.

[10]At this early stage in the proceedings, the Court will not retain jurisdiction over any ancillary state law claims that may exist. *See* 28 U.S.C. § 1367(c) (2005); *Gibbs*, 383 U.S. at 726.

-17-

federal court, Plaintiffs have limited themselves by judicial admission to state law causes of action, whether viable or not." Austin v. Life Ins. Co. of Ga., No. 03-2710 MI/A, 2003 WL 23413695, *2 (W.D. Tenn. Dec. 9, 2003); Wilton Partners III LLC v. Gallagher, No. 03 C 1519, 2003 WL 22880823, *8 (N.D. Ill. Dec. 5, 2003). In other words, the Plaintiffs had the right to bring their case in state court based solely on state law claims and to disclaim any federal claims, thereby preventing removal to federal court, but the cost of such action was to give up the right to bring the federal claims. See E. States Health & Welfare Fund v. Philip Morris, Inc., 11 F.Supp.2d 384, 389 (S.D.N.Y. 1998). Thus, it would appear that the Plaintiffs gave up their right to bring any federal causes of action based on Defendant SWBT's conduct.

The effect of Plaintiffs' waiver of their right to bring federal causes of action during the state court proceedings is that they are barred by the doctrine of res judicata from bringing those claims in a separate case. See Louisiana Food Mgmt. v. Foster, 53 F. Supp. 2d 872, 883 (E.D. La. 1999); see also Austin, 2003 WL 23413695, at *2; Gallagher, 2003 WL 22880823, at *8; Nwanze v. Philip Morris Inc., 100 F. Supp. 2d 215, 222 (S.D.N.Y. 2000); E. States Health & Welfare Fund, 11 F. Supp. 2d at 389. Thus, the Plaintiffs in the state court case may not bring any federal causes of action, in this or any other court, against SWBT based on the services it provided to them.

The Plaintiffs in this case, however, are not exactly the same as the Plaintiffs in the state court case.[11] The Court must therefore determine if there is "a sufficiently close identity of interests between the parties such that the application of res judicata would be appropriate." Foster, 53 F. Supp. 2d at 883 (citing Tice v. Am. Airlines, 162 F.3d 966, 971 (7th Cir. 1998)).

Although the purported Plaintiff classes in these two cases are not identical, res judicata may still apply, if there is privity between the Plaintiffs in the two cases through a theory of virtual representation. Id. at 873. In order to establish virtual

---

[11]The Court will assume, for purposes of this Opinion, that the purported class of Plaintiffs is not precisely the same, although the Plaintiffs repeatedly imply that they are the same as the plaintiffs in the state court action. Dkt. No. 12, at 1, 2, 3, 4, 6, 7, 10, 11, 12.

representation, there must "exist[] a substantial relationship between the party and nonparty, such that the party adequately represented the interests of the nonparty." *Id.* at 877 (quoting *Tyus v. Schoemehl*, 93 F.3d 449, 454–55 (8th Cir. 1996)). Whether this relationship existed is determined by evaluating a number of factors: (1) the identity of interests between the parties; (2) the closeness of the relationship between the former and the present parties; (3) participation in the previous/concurrent litigation; (4) "apparent acquiescence;" (5) deliberate maneuvering to avoid res judicata; (6) adequacy of representation;[12] and (7) the nature of the issue as public or private law. *Id.* at 878 (quoting *Petit v. City of Chicago*, 766 F. Supp. 607, 612 (N.D. Ill. 1991)).

In the case *sub judice*, the Plaintiffs have the same interests as the state court plaintiffs. In fact, "the claims of each set of petitioners [are] virtually identical," as both groups of plaintiffs seek damages based on an alleged overcharge by SWBT. *Id.* Furthermore, there is substantial overlap between the plaintiffs in the two suits. This overlap also provides the current Plaintiffs with participation and representation in the state court suit, as well as acquiescence in that suit, because many of the plaintiffs are involved in the other case.[13] *See id.* The identity of interests, and of plaintiffs, also leads to the conclusion that the Plaintiffs in this case are adequately represented in the state court case. "Moreover, the same counsel represent[s] plaintiffs in both actions." *Id.* at 879 (quoting *Tyus*, 93 F.3d at 459). Finally, it is obvious that the Plaintiffs are engaging in tactical maneuvering to evade what is occurring in the state court action.[14]

---

[12]This is established "when the interests of the two parties are very closely aligned and the first party had a strong incentive to protect the interests of the second party." *Foster*, 53 F. Supp. 2d at 878.

[13]These plaintiffs may not be actively involved, but they are still parties to the case.

[14]Plaintiffs state as much in their response to the motions to dismiss: "Since SWBT continues its efforts to deny Plaintiffs their rightful refund, *Plaintiffs refiled their case in federal court* to put this sole factual issue squarely before the Court." Dkt. No. 12, at 1 (emphasis added).

Moreover, although Plaintiffs accuse SWBT of engaging in "manipulation of the judicial system," it is clear that Plaintiffs are the ones who have been attempting to

*Id.* at 878, 883–84. All of these factors weigh heavily in favor of a finding of virtual representation.

In contrast, only one factor leans in favor of finding that the Plaintiffs here are not in privity with the plaintiffs in the state court case — the issues in these cases are issues of private, not public, law. *Id.* at 878. Although this is an important factor, it is insufficient, standing alone, to prevent a finding that there is privity between the two sets of plaintiffs. Therefore, the Court finds that privity exists and that the Plaintiffs are virtually represented by the plaintiffs in the state court case.

Based on this finding, the Court concludes that the Plaintiffs' claims against Defendant SWBT are barred by the doctrine of res judicata. The Plaintiffs expressly disclaimed any federal causes of action or federal remedies in order to have this Court remand the state court action. *See Trevino*, 2005 WL 2346950, at *2. Therefore, the Plaintiffs are bound by those disclaimers and may not now assert those federal causes of action against SWBT.

iii. Proper Disposition of the Case

Defendant SWBT moves both for dismissal and, alternatively, for a stay of this case. Dkt. No. 8, at 2. The Court will therefore consider whether the case should be stayed or dismissed, and, if dismissed, whether with or without prejudice.

First, the Court finds no basis for staying the claims against the Individual

_____

manipulate the system. *Id.* at 3. Not only have Plaintiffs fought against the federal court jurisdiction they are now seeking, but Plaintiffs present arguments to this Court, which should be adjudicated by the Texas Supreme Court, in an effort to sidestep the stay imposed by Texas' highest court. For example, Plaintiffs argue that "this Court should not stay this case in favor of any state administrative proceedings," because "the PUC itself acknowledges that it has no authority to award monetary damages." *Id.* at 12. Whether or not this case should be stayed in deference to administrative proceedings is not an issue before this Court. Rather, this Court is faced with the issue of whether it has jurisdiction and, if so, whether it should defer to the state courts. The Texas Supreme Court, on the other hand, must decide whether the state court case should be stayed in deference to the PUC. This Court does not have supervisory powers over the Texas Supreme Court and will not usurp that court's authority by ruling on issues that have been presented to that court.

Defendants.  As stated above, the only cause of action which the Plaintiffs actually asserted against the Individual Defendants arises under state law.  *See supra* § III.A.ii. Therefore, there is only one claim to consider and, given the early stage in these proceedings, the Court declines to exercise ancillary jurisdiction over it.  *See* 28 U.S.C. § 1367(c) (2005); *Gibbs*, 383 U.S. at 726.  The Court dismisses the conversion claim against the Individual Defendants without prejudice.

Next, the Court finds that both the *Younger* doctrine and the *Colorado River* doctrine require dismissal of all of the Plaintiffs' claims.  When *Younger* applies, federal courts are prohibited from retaining jurisdiction until the state court proceedings end and then rendering judgment.  *See Beltran*, 871 F.2d at 782.  Under *Colorado River*, the case must be dismissed in deference to the concurrent state court proceeding.  *See Colorado River*, 424 U.S. at 818–19.  Therefore, Plaintiffs' claims against SWBT must be dismissed.

Furthermore, the *Younger* and *Colorado River* doctrines also prohibit the Court from granting the Plaintiffs' request for leave to amend their complaint as to the Individual Defendants.  Although it may be possible for the Plaintiffs to assert claims against the Individual Defendants, any claim asserted would require resolution of the same issues as the claims against SWBT.  Therefore, if the Court granted leave to amend, it would then have to abstain from deciding those issues, thereby requiring dismissal of those claims.  Thus, amendment at this time would be futile, and the Court denies leave to amend the complaint.[15]

Furthermore, under the doctrine of res judicata, the federal claims against SWBT are barred and may not be brought in the future.  Therefore, these claims must be dismissed with prejudice.  The state court claims against SWBT, however, are not barred by res judicata and will be dismissed without prejudice.

---

[15]The Court notes that Plaintiffs are not barred from bringing any potentially viable claims at some future time.  The Court does not dismiss these claims with or without prejudice, because there have been no claims asserted for the Court to dismiss.

## IV.    Conclusion

Based on the foregoing, the Court **GRANTS** Defendant Southwestern Bell Telephone, L.P.'s Motion to Dismiss, Dkt. No. 8; **GRANTS** the Individual Defendants' Motion to Dismiss, Dkt. No. 10; and **DENIES** the Plaintiffs' request for leave to amend. Dkt. No. 12, at 18.

Therefore, the Court **ORDERS** that:

(1)    Plaintiffs' conversion claim against the Individual Defendants is **DISMISSED** without prejudice;

(2)    Plaintiffs' claims against SWBT for violation of the Federal Communications Act, breach of contract, and breach of refund policy are **DISMISSED** with prejudice; and

(3)    Plaintiffs' claims against SWBT for conversion and unjust enrichment are **DISMISSED** without prejudice.

DONE at Brownsville, Texas, this 18th day of July, 2006.

Hilda G. Tagle

United States District Judge

-22-