**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
ENTERED

DEC - 6 2006

Michael N. Milby, Clerk of Court
By Deputy Clerk D Ahumada

| | | |
|---|---|---|
| **ROBERT SCOTT HOWELL d/b/a SOUTH COAST SPINE & REHABILITATION and LETTY PEREZ, Individually and on behalf of all others similarly situated,** | § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. B-06-75** |
| **SOUTHWESTERN BELL TELEPHONE, L.P. d/b/a AT&T TEXAS, JAN NEWTON, ALFRED G. RICHTER, JR., DAN KAESHOEFER, and JAMES E. STIDHAM, JR.,** | § § § § § § | |
| **Defendants.** | § § | |

## OPINION & ORDER

BE IT REMEMBERED that on December 5, 2006, the Court considered Plaintiffs' Motion for New Trial and Motion to Alter or Amend Judgment. Dkt. No. 18. Upon careful review of Plaintiffs' motion, the record in this case, and all authority cited by the Plaintiffs, the Court is of the opinion that the motion is devoid of merit. In their motion, Plaintiffs make flagrantly inappropriate and inflammatory statements, mischaracterize both the prior Opinion & Order of this Court and the Motions to Dismiss by the Defendants, and proffer numerous improper and frivolous arguments. Therefore, Plaintiff's motion will be **DENIED**. *Id.*

### I.    Background

In an effort to simplify this Opinion, the Court will not repeat the factual background of this case. Instead, the Court incorporates the factual background as set forth in the Court's Opinion & Order of July 18, 2006. Dkt. No. 17, at 1–2. Furthermore, the Court will only present the procedural events which are the most salient and

-1-

pertinent to the motion *sub judice.*

The origins of this case can be found in a state court case, *Trevino v. Southwestern Bell Telephone Co., L.P.*, No. Civ.A. M-04-377, 2005 WL 2346950 (S.D. Tex. Sept. 26, 2005).  That case was originally brought on June 27, 2003, in the 275th Judicial District Court, Hidalgo County, Texas.  *Id.* (Dkt. No. 1, Ex. B, Plaintiffs' Original Petition).  At that time, the case was filed as a class action, and the plaintiffs sought three forms of relief: a declaratory judgment, an injunction, and remedies for unjust enrichment.  *Id.* (Dkt. No. 1, Ex. B, Plaintiffs' Original Petition).  The Plaintiffs amended their petition four times, on August 29, 2003, April 20, 2004, May 21, 2004, and November 1, 2004.  *Id.* (Dkt. No. 1, Ex. B, Plaintiffs' First Amended Original Petition, Plaintiffs' Second Amended Original Petition, Plaintiffs' Third Amended Original Petition, Plaintiffs' Fourth Amended Original Petition).  As of November 1, 2004, the plaintiffs were still presenting their claims on behalf of a purported class, but the causes of action had changed.  *Id.* (Dkt. No. 1, Ex. B, Plaintiffs' Fourth Amended Original Petition).  In their Fourth Amended Original Petition, the plaintiffs brought claims for declaratory relief, injunctive relief, unjust enrichment, breach of contract, and deceptive trade practices.  *Id.* (Dkt. No. 1, Ex. B, Plaintiffs' Fourth Amended Original Petition).

Four days after the plaintiffs filed their Fourth Amended Original Petition, on November 5, 2004, Defendants removed the case to the McAllen Division of the Southern District of Texas.  *Id.* (Dkt. No. 1).  Defendants based their removal on federal question jurisdiction.  *Id.* (Dkt. No. 1, at 1, 2).  Three weeks later, on November 26, the plaintiffs moved to remand the case.  *Id.* (Dkt. No. 4).  In their motion, the plaintiffs argued that the federal court lacked subject matter jurisdiction, because their claims were not completely preempted by federal law, they did not allege any federal causes of action, and they "expressly disclaimed any remedies under federal law they may have for this conduct."  *Id.* (Dkt. No. 4, at 1, 3, 5).

After the motion to remand was filed, both of the United States District Court

-2-

judges in the McAllen Division recused themselves from the case.[1]  *Id.* (Dkt. Nos. 7, 9). The case was therefore transferred to this Court in the Brownsville Division on March 15, 2005.  *Id.* (Dkt. No. 11).

This Court heard argument regarding the motion to remand on April 25, 2005, at which time the Court took the motion under advisement.  *Id.* (Dkt. No. 18).  Finally, on September 26, 2005, this Court granted the plaintiffs' motion to remand and ordered the case remanded to the 275th Judicial District Court in Hidalgo County.  *Id.*

In granting the plaintiffs' motion, this Court explicitly relied upon the plaintiffs' representation that they were expressly disclaiming any federal remedies they may have as a result of the Defendants' actions.  *Id.* at *1, *2, *5, *7 n.6, *9.  With this representation informing the Court's analysis, the Court found that the plaintiffs' claims were not completely preempted, that the plaintiffs were seeking only state law remedies, and that the plaintiffs had waived any federal claims or remedies that might otherwise have existed.  *Id.* at *4–*5, *6–*9.  The case was remanded.  *Id.* at *10.

Normally, an order remanding a case ends the case as far as the federal courts are concerned, unless the plaintiffs file an additional amended complaint providing a basis for federal jurisdiction and the defendants remove the case a second time.  In this case, however, the adjudication of the case upon remand did not proceed smoothly. Instead, Defendant Southwestern Bell Telephone Company ("SWBT") "requested mandamus relief from the Texas Supreme Court."  Dkt. No. 12, at 3.  SWBT also requested that the plaintiffs' claims be stayed pending the result of the mandamus request.  *Id.*  The stay was granted.  *Id.*; Dkt. No. 8, at 1.

As a result of the stay, "Plaintiffs refiled their case in federal court."[2]  Dkt. No. 12, at 1.  Plaintiffs again presented their case as a class action; the class, however, contained slight variations from the class asserted in *Trevino*.  Dkt. No. 1, at 13–16.  In

---

[1] Judge Hinojosa recused himself on December 23, 2004.  *Id.* (Dkt. No. 7).  Judge Crane recused himself on February 8, 2005.  *Id.* (Dkt. No. 9).

[2] The Court notes that the Plaintiffs do not differentiate themselves from the *Trevino* plaintiffs in any manner, instead referring to themselves as being identical plaintiff classes.  *See, e.g.*, Dkt. No. 12, at 1.

addition, Plaintiffs' federal complaint asserted five claims, some of which were the federal law equivalent of the claims asserted in *Trevino*.[3]  *Id.* at 11–13.

Moreover, Plaintiffs were not the only litigants who flipped positions regarding their desire for federal jurisdiction over the case: Defendants responded to Plaintiffs' complaint by filing motions to dismiss.  Dkt. Nos. 8, 10.  In their motions, Defendants argued that this Court should either dismiss the case or at least impose a stay until the conclusion of *Trevino*, based on the doctrine of *Burford* abstention.[4]  Dkt. No. 8, at 6–15; Dkt. No. 10, at 10.

On July 18, 2006, after careful consideration of the parties' arguments, the motions, and the procedural history of the case, this Court granted both Defendant SWBT's and the Individual Defendants' Motions to Dismiss.  Dkt. No. 17.  In rendering this decision, the Court made a number of findings and conclusions.  First, the Court held that the Plaintiffs failed to properly allege any contractual or quasi-contractual claims against the Individual Defendants, that a claim under the FCA cannot be asserted against the Individual Defendants, and that only an action for conversion was actually asserted against the Individual Defendants.  *Id.* at 5–7.  Second, the Court determined that *Burford* abstention was not proper in this case.  *Id.* at 9–12.  Next, the Court concluded that dismissal of the case was required by both the *Younger*[5] and

---

[3]Plaintiffs asserted violations of the Federal Communication Act ("FCA"), unjust enrichment, breach of contract, breach of refund policy, and conversion.  Dkt. No. 1, at 11–13.  Three of these claims — for violation of the FCA, breach of contract, and breach of refund policy — arise under federal law.  Furthermore, the claims are all virtually identical to claims asserted in *Trevino*, other than the fact that three of them arise under federal law.  *Compare id.*, with *Trevino*, No. Civ.A. M-04-377 (Dkt. No. 1, Ex. B, Plaintiffs' Fourth Amended Original Petition).

[4]Defendants Jan Newton, Alfred G. Richter, Jr., Dan Kaeshoefer, and James E. Stidham, Jr. ("Individual Defendants") also moved to dismiss the case because they could not be liable for any of the claims asserted and because no claims were actually asserted against them.  Dkt. No. 10, at 10.

[5]The *Younger* abstention doctrine was created by *Younger v. Harris*, 401 U.S. 37 (1971).

*Colorado River*[6] doctrines.[7]  *Id.* at 12–17.  Fourth, the Court noted that Plaintiffs' counsels' conduct, by re-filing the case in federal court after successfully seeking remand of the case to state court, approached the line for unethical conduct at which sanctions are appropriate.  *Id.* at 16.  Finally, the Court dismissed the Plaintiffs' federal claims against SWBT with prejudice, finding that the Plaintiffs in the federal complaint were, at a minimum, virtually represented by the plaintiffs in the *Trevino* case and that the express disclaimer of any federal remedies by the *Trevino* plaintiffs barred the assertion of those federal claims in federal court.  *Id.* at 19–22.

Plaintiffs excepted to the Court's Opinion & Order granting dismissal of the case and therefore filed the motion *sub judice* on July 28, 2006.  Dkt. No. 18.

## II.    Applicable Standards

The Plaintiffs move the Court to grant a new trial or to alter or amend its judgment.  Dkt. No. 18.  These two requests involve different standards of analysis.  Therefore, the Court will separately present each of the standards.

### A. Motion for New Trial

Motions for new trial are governed by Federal Rule of Civil Procedure 59(a).  FED. R. CIV. P. 59(a).  There are three grounds upon which a new trial may be granted: "(1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence."  Brown v. Wright, 588 F.2d 708, 710 (9th Cir. 1978) (citing 6A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 59.07); United States v. Schiffer, 836 F. Supp. 1164, 1169 (E.D. Pa. 1993) (citing *Brown*, 588 F.2d at 710).  However, "[t]he decision to grant a new trial lies within the court's discretion."  *Schiffer*, 836 F. Supp. at 1169 (citations omitted).  Moreover, even if grounds for granting a new trial exist, one "cannot be

---

[6]The *Colorado River* abstention doctrine was created by *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

[7]The Court also alluded to, but did not explicitly mention by name, the doctrine of judicial estoppel.  Dkt. No. 17, at 16–17.

granted . . . because of mere harmless error." *Id.* (citing FED. R. CIV. P. 61).

### B. Motion to Alter or Amend Judgment

Motions under Rule 59(e) "call[] into question the correctness of a judgment." Templet v. Hydrochem Inc., 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re* Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir. 2002)).  In making the determination of whether to reconsider its judgment, a court must balance two opposing needs: the need for finality of litigation and the need to render just decisions based upon all of the facts. *Templet*, 367 F.3d at 478; Mata v. Cameron County, Texas, No. C.A. B-04-92, 2005 WL 2146078, *1 (S.D. Tex. Sept. 2, 2005).  However, once a judgment has been entered, reconsideration of that judgment is "an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 478; *Mata*, 2005 WL 2146078, at *1.

To prevail upon a Rule 59(e) motion, the movant must establish the existence of an appropriate basis for reconsideration. *See Mata*, 2005 WL 2146078, at *1.  The two most prevalent bases are a need "to correct manifest errors of law or fact" and the discovery of new or previously unavailable evidence. *Templet*, 367 F.3d at 479; *Mata*, 2005 WL 2146078, at *1.  Reconsideration may also be appropriate if it is "necessary in order to prevent manifest injustice" or if there has been "an intervening change in controlling law." *Mata*, 2005 WL 2146078, at *1.  If the movant fails to establish any of these factors, a motion to alter or amend should be denied. *Id.*  Furthermore, even if the movant successfully proves that one of these factors exists, the Court has considerable discretion to determine whether reconsideration of its judgment is warranted. *See Templet*, 367 F.3d at 479; *Mata*, 2005 WL 2146078, at *1.

### III.   Analysis[8]

As the grounds for their motion, the Plaintiffs allege that the Court committed

---

[8]The Court notes that Plaintiffs failed to include a table of contents, a table of citations, and a certificate of conference in their motion, in violation of Chamber Rules 5.I(3) and Local Rules 7.1(D)(1), (2).  However, given the severity of the other flaws in Plaintiffs' motion, the Court will overlook these relatively minor defects.

manifest errors of law and fact in its Opinion & Order of July 18, 2006. Dkt. No. 18, at 2. The presence of a manifest error of law or fact would provide a basis for the Court, in its discretion, to grant either of Plaintiffs' motions. Fed. R. Civ. P. 59(a), (e). Plaintiffs assert no other potential bases for their motion. Therefore, for Plaintiffs' motion to succeed, they must establish that one of the alleged errors actually exists. *Mata*, 2005 WL 2146078, at *1. Each of the alleged errors will be considered in turn. The Court will then conclude its analysis by applying the doctrine of judicial estoppel to this case.

### A. Errors of Law

Plaintiffs aver that the Court committed errors of law which can be divided into three general categories — the Court's application of the doctrines of res judicata, *Younger* abstention, and *Colorado River* abstention. Dkt. No. 18, at 3–15. Each of these general topics will be considered in depth. First, however, the Court will address the *England* doctrine, a concept that appears throughout Plaintiffs' motion.

### 1. The *England* Doctrine

In *England v. Louisiana State Board of Medical Examiners*, the Supreme Court created a procedure by which litigants who properly invoked federal jurisdiction could retain their right to have federal issues tried by federal courts, even if the case is first tried in a state court. England v. La. State Bd. of Med. Exam'rs, 375 U.S. 411 (1964). This procedure is referred to as the *England* doctrine.

In *England*, the appellants were chiropractors who wanted to practice in Louisiana without complying with the state educational requirements contained in the Louisiana Medical Practice Act. *Id.* at 412. They brought an action against the state board of medical examiners seeking a declaration that the Medical Practice Act violated the Fourteenth Amendment. *Id.* at 412–13. The district court, acting *sua sponte*, abstained, so that the state courts could determine whether the state law applied to chiropractors. *Id.* at 413. The case was therefore stayed until the state courts rendered a decision on that issue. *Id.*

-7-

In the state courts the appellants litigated the constitutional question in addition to the state law question, and both questions were determined in the appellees' favor. *Id.* at 413–14. Appellants then attempted to bring their federal claims in federal court. *Id.* at 414. The federal court dismissed the complaint, finding that the Louisiana courts had already ruled on all of the issues, thereby precluding the federal court from re-passing on those claims. *Id.* The case was appealed to the Supreme Court, which granted certiorari.

On review, the Supreme Court stated that "[t]here are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims." *Id.* at 415. A litigant can, of course, abandon his or her original choice of a federal forum and decide to litigate all of his or her claims in state court, and this choice will be given effect. *Id.* at 418. The Court held, however, that the determination of whether this choice was made should be governed by a bright line test, "so that litigants shunted from federal to state courts by application of the abstention doctrine will not be exposed . . . to procedural traps operating to deprive them of their right to a District Court determination of their federal claims." *Id.* Nonetheless, if the litigant unreservedly presents his federal claims to the state court, he will be deemed to have "elected to forgo his right to return to the District Court." *Id.* at 419.

The Court then addressed the requirements of *Government & Civic Employees Organizing Committee, C.I.O. v. Windsor.* *Id.* According to the Court, that case does not require a party to litigate his federal claims in the state courts, it merely requires the party to "inform those courts what his federal claims are." *Id.* at 420. After specifically noting the difficulties inherent in simply notifying a state court of what a party's federal claims are without arguing those claims,[9] the Court stated that the party may reserve

---

[9] The Supreme Court has recognized that "in the heat of litigation a party may find it difficult to avoid doing more than is required by *Windsor.*" *Id.* Other courts have also recognized that following the procedures in *Windsor* and *England* may be challenging: "One of the difficulties inherent in the *England* process is that a plaintiff walks a fine line

his claims by simply informing "the state courts that he is exposing his federal claims there only for the purpose of complying with *Windsor*" and that he intends to return to federal court. *Id.* at 420–21. An explicit reservation is not absolutely necessary, however, as a "litigant is in no event to be denied his right to return to the District Court *unless* it clearly appears that he voluntarily did more than *Windsor* required and fully litigated his federal claims in the state courts." *Id.* at 421 (emphasis added). Thus, the Court created a rule whereby a plaintiff may reserve his right to litigate federal claims in federal court by informing the state court of those claims and by declining to pursue them in state court. *Id.*

Based on this new rule, the Court stated that it should affirm the District Court's decision to dismiss the case, as the appellants had unreservedly litigated their federal claims in state court. *Id.* at 422. Nevertheless, the Court reversed the decision, holding that the newly announced rule should not be applied against the appellants. *Id.* at 422–23.

In the case *sub judice*, the Plaintiffs rely on the *England* doctrine as a basis for their contention that the Court erred when it dismissed their federal claims. Dkt. No. 18, at 3, 6, 7–9, 11 n.1, 14. Plaintiffs argue that their federal claims have not been litigated by any court. *Id.* at 8. Plaintiffs also aver that they "cannot be forced to adjudicate their federal claims in state court" and that a federal court cannot abstain merely "because a state court could hear the federal claims." *Id.* at 11 n.1. Finally, Plaintiffs contend that "due process does not allow federal claims to be adjudicated by a state court against a party's wishes." *Id.* at 21–22. Before considering these arguments, however, the Court will address several over-arching problems with the Plaintiffs' reliance on this doctrine.

The first problem with the Plaintiffs' reliance on the *England* doctrine is that this case does not involve *Pullman* abstention. It is now well established that *England* applies only in cases of *Pullman* abstention. *See, e.g.*, Otrompke v. Chairman of the Comm. on Character and Fitness for the First Judicial Dist. of Ill., No. 03 C 7198, 2005

---

between saying too little and saying too much."   United Parcel Serv., Inc. v. Cal. Pub. Util. Comm'n, 77 F.3d 1178, 1186 (9th Cir. 1996).

WL 1126914, *3 (N.D. Ill. May 12, 2005), and cases cited therein; Hoblock v. Albany County Bd. of Elections, 341 F.Supp.2d 169, 174 (N.D.N.Y. 2004); Sekor v. Capwell, 1 F.Supp.2d 140, 146–47 (D. Conn. 1998). Furthermore, "[t]he purposes behind *Pullman* abstention are not present in this case, and therefore *England* is inapposite." *Hoblock*, 341 F.Supp.2d at 174. Thus, Plaintiffs' reliance on the *England* doctrine has no merit, and it provides no support for their contentions.

The second universally applicable problem with Plaintiffs' reliance on the *England* doctrine relates to the procedural posture of this case. The doctrine applies when a plaintiff brings a claim in federal court *first*, and then is forced to litigate in state courts as a result of abstention by the federal court. *See, e.g.*, United Parcel Serv., Inc. v. Cal. Pub. Util. Comm'n, 77 F.3d 1178, 1183–86 (9th Cir. 1996); Schuster v. Martin, 861 F.2d 1369, 1373–74 (5th Cir. 1988); Fuller Co. v. Ramon I. Gil, Inc., 782 F.2d 306, 312 (1st Cir. 1986); Hickerson v. City of N.Y., 997 F. Supp. 418, 423 (S.D.N.Y. 1998); Colonial Penn Group, Inc. v. Colonial Deposit Co., 654 F. Supp. 1247, 1253 (D. R.I. 1987). In this case, the Plaintiffs emphatically chose to litigate their case in *state* court. *See Trevino*, No. Civ.A. M-04-377 (Dkt. No. 1, Ex. B, Plaintiffs' Fourth Amended Original Petition; Dkt. Nos. 4, 10). They brought the case in state court first, Defendants removed, and Plaintiffs successfully sought remand. *Id.* (Dkt. No. 1, Ex. B, Plaintiffs' Fourth Amended Original Petition; Dkt. Nos. 1, 4, 21). Only after they became dissatisfied with the state court case did the Plaintiffs seek federal court jurisdiction. Dkt. Nos. 1, 12. The Plaintiffs in this case were not "shunted" to state court or "compelled" to litigate in state court. *England*, 375 U.S. at 415, 418. Thus, *England* is not applicable to this case.

Furthermore, even if *England* were applicable, Plaintiffs' reliance on it would still be misplaced. The crux of each of Plaintiffs' arguments is that they did not freely litigate their federal claims in state court. Based on this core principle, Plaintiffs state that their federal claims have not been litigated and imply that they refrained from litigating those claims, thereby reserving the claims for a federal forum. Dkt. No. 18, at 8. Plaintiffs conclude that they cannot be forced to litigate the claims in state court. *Id.* at 11.

-10-

Plaintiffs, however, did not merely inform the state court of their federal claims; Plaintiffs *expressly disclaimed* those claims. *See Trevino*, No. Civ.A. M-04-377 (Dkt. No. 1, Ex. B, Plaintiffs' Fourth Amended Original Petition, at 7; Dkt. No. 4, at 3). Through this express disclaimer, Plaintiffs effectively "litigated" their claims, because an express disclaimer operates as a waiver of the merits of the claims. *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) ("A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege."); BLACK'S LAW DICTIONARY 496 (8th ed. 2004) (defining disclaimer as "[a] renunciation of one's legal right or claim"); 31 C.J.S. *Estoppel and Waiver* §§ 67, 74, 75, 87; *see also* Iowa v. Tovar, 541 U.S. 77, 92 (2004) (explaining that a waiver is effective if the party making the waiver understands the general consequences of his or her actions, regardless of whether the party is aware of the "*specific detailed* consequences" (emphasis in original)) (quoting United States v. Ruiz, 536 U.S. 622, 629 (2002)); W.J. McCahan Sugar Ref. Co. v. Steamship Wildcroft, 201 U.S. 378, 385 (1906) (stating that a party's disclaimer of certain bases for damages waived those bases); Rogers v. City of San Antonio, 392 F.3d 758, 773 (5th Cir. 2004) (holding that plaintiffs were limited to claims which had not been waived); Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown, 897 F.2d 275, 282 (7th Cir. 1990) (affirming summary judgment against plaintiff on claims which plaintiff had waived); Dooley v. Weil, 672 F.2d 1340, 1347 (11th Cir. 1982) (stating the elements of a waiver); Hall Labs. v. Millar Bros. & Co., 152 F.Supp. 797, 802 (E.D. Pa. 1957) (discussing the policies underlying the concept of waiver); Roberts v. Griffith, 207 S.W.2d 443, 446 (Tex. Civ. App. 1948) ("It has been held that a waiver is like the legal concept of election of remedies."), *abrogated on other grounds as stated in* Sedona Contracting, Inc. v. Ford, Powell & Carson, Inc., 995 S.W.2d 192, 196 (Tex. App. 1999). Neither *Windsor* nor *England* necessitates this type of action. Thus, Plaintiffs did more than required by *Windsor* and cannot invoke the *England* doctrine. *See England*, 375 U.S. at 421.

The Court agrees with Plaintiffs' contention that they cannot be forced to litigate federal claims in state court. Nonetheless, this contention contains an invalid underlying assumption — that the Plaintiffs were forced to litigate federal claims in state

-11-

court. This assumption is invalid for two reasons. First, Plaintiffs *voluntarily* chose to expressly disclaim their federal claims, thereby voluntarily disposing of those claims in state court. *See Trevino*, No. Civ.A. M-04-377 (Dkt. No. 1, Ex. B, Plaintiffs' Fourth Amended Original Petition, at 7; Dkt. No. 4, at 3). Thus, Plaintiffs' federal claims were litigated in state court, but not as the result of adjudication "by a state court against a party's wishes."[10] Dkt. No. 18, at 21–22; *England*, 375 U.S. at 415. Second, Plaintiffs chose the state court forum and adamantly defended that choice. *Trevino*, No. Civ.A. M-04-377 (Dkt. Nos. 4, 10). The fact that they have now changed their minds and have become unhappy with their decision does not transmute the proceedings in this case to a position wherein the Plaintiffs are in state court against their wishes.

Finally, the Court also agrees that a federal court cannot abstain merely because the state court could hear the federal claims. *See Colorado River Water Conservation Dist.*, 424 U.S. at 813–14 (quoting Alabama Pub. Serv. Comm'n v. S. Ry. Co., 341 U.S. 341, 361 (1951)). This statement is irrelevant to this case, however, because the Court abstained based on *Younger* and *Colorado River* abstention, not because of the state court's ability to hear the claims.[11] Dkt. No. 17, at 12–17. Thus, Plaintiffs' arguments based on the *England* doctrine fail.

---

[10]Plaintiffs also state that they may seek a federal forum "even if their state law claims were previously removed to federal court and remanded because they did not raise any federal questions." Dkt. No. 18, at 11 n.1.

The Court expresses no opinion regarding this statement, because that is not what happened in this case. Plaintiffs did not merely refrain from raising federal questions. Instead, Plaintiffs expressly disclaimed any federal remedies and claims. *See Trevino*, No. Civ.A. M-04-377 (Dkt. No. 1, Ex. B, Plaintiffs' Fourth Amended Original Petition, at 7; Dkt. No. 4, at 3). Whether or not Plaintiffs could seek federal jurisdiction of federal claims which had merely not been raised in state court is irrelevant to this case.

[11]The Court considered the state court's ability to hear the federal claims because the state court's ability is a factor in *Younger* abstention. *Juidice*, 430 U.S. at 337 ("Here it is abundantly clear that appellees had an opportunity to present their federal claims in the state proceedings. No more is required to invoke *Younger* abstention.").

2. Res Judicata

The first general category of errors alleged by the Plaintiffs encompasses the Court's application of res judicata in this case. Dkt. No. 18, at 3–9. Plaintiffs contend that a court cannot apply the doctrine of res judicata *sua sponte*; that they were deprived of due process because they were not given notice and an opportunity to respond before application of the doctrine of res judicata; that res judicata is inapplicable to this case; that remand orders have no preclusive effect; that virtual representation does not exist merely because of identity of counsel; and that dismissing their claims with prejudice would produce a "clearly unjust result." *Id.* at 1–2, 3–9. None of these arguments is meritorious.

As an initial matter, the term "res judicata" may be used in the specific sense, to refer solely to the doctrine of claim preclusion, or it may be used to refer to two other doctrines:[12] issue preclusion, also referred to as collateral estoppel, and claim-splitting, also referred to as the doctrine of "other actions pending." *See* Allen v. McCurry, 449 U.S. 90, 94 n.5 (1980); Tartt v. Nw. Cmty. Hosp., 453 F.3d 817, 822 (7th Cir. 2006); United Parcel Serv. v. Cal. Pub. Util. Comm'n, 77 F.3d 1178, 1185 n.6 (9th Cir. 1996); Sensormatic Sec. Corp. v. Sensormatic Elec. Corp., 329 F.Supp.2d 574, 579 (D. Md. 2004). When used in the specific sense, res judicata does require a final judgment. *Tartt*, 453 F.3d at 822. However, neither collateral estoppel nor claim-splitting require a final judgment. In fact, the issue of claim-splitting may be barred upon issuance of a final judgment. *See Allen*, 449 U.S. at 94; Hartsel Springs Ranch of Co. v. Bluegreen Corp., 296 F.3d 982, 987 n.1 (10th Cir. 2002); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982) ("However, for purposes of issue preclusion . . ., 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."). Therefore, if

---

[12]Although not generally referred to as res judicata, the doctrine of judicial estoppel also falls loosely within the umbrella of the term. *See, e.g.*, WRIGHT, MILLER, & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 4477 (discussing judicial estoppel under the heading "Other Topics" within the overall heading of "Res Judicata").

either collateral estoppel or claim-splitting applies, no final judgment is necessary for the application of res judicata.

In this case, the Court held that the Plaintiffs' federal claims were barred by res judicata, but that their state law claims were not. Dkt. No. 17, at 18, 20, 21. Because the Court did not apply the doctrine to all of the claims in the case or base its application of the doctrine on the existence of a pending state court case, it is clear that the Court was not applying the doctrines of claim preclusion or claim-splitting. *See Allen*, 449 U.S. at 94 & n.5; *Bluegreen Corp.*, 296 F.3d at 987 n.1. Although the Court did not clearly state so, in using the term res judicata the Court was referring to issue preclusion or collateral estoppel. Therefore, no final judgment on the merits was necessary to the Court's application of the doctrine, because collateral estoppel requires only that "a court has decided an issue of fact or law necessary to its judgment."[13] *Allen*, 449 U.S. at 94.

Nevertheless, for application of collateral estoppel to be appropriate, there must be privity between the parties in two cases, in addition to the decision of an issue necessary to a court's judgment. *See* Tice v. Am. Airlines, 162 F.3d 966, 971 (7th Cir. 1998). In this case, privity is established by the doctrine of virtual representation.[14] In its previous opinion, this Court relied upon three federal appellate cases, as cited and discussed in *Louisiana Food Management v. Foster*, 53 F.Supp.2d 872, 876–83 (E.D. La. 1999), in its discussion of virtual representation. Dkt. No. 17, at 18–20. Based on the similarity in claims between this case and the state court case, the overlap in plaintiffs in the two cases, the participation and representation of Plaintiffs in the state court case, the tactical maneuvering of Plaintiffs, and the identity of counsel between

---

[13]An issue of fact or law necessary to a judgment had been decided, given that Plaintiffs expressly waived any federal claims, which was an issue of fact that was necessary for this Court's judgment regarding whether or not it had subject matter jurisdiction over the case.

[14]The Court will assume, as it did in its previous Opinion, that the two purported Plaintiff classes are not exactly the same. Dkt. No. 17, at 18 n.11 (noting that Plaintiffs themselves "repeatedly imply that they are the same as the plaintiffs in the state court action").

-14-

the parties, all factors discussed in the cases cited in *Foster*, this Court reaffirms its previous holding that Plaintiffs were virtually represented by the plaintiffs in the state court action. *Id.* In addition, because of the virtual representation of Plaintiffs in the state court case and the substantial, if not total, overlap between the two plaintiff classes, the Court concludes that there was adequate incentive for the *Trevino* plaintiffs to protect the Plaintiffs' federal interests.[15] *Id.* at 19. Thus, application of the doctrine of collateral estoppel was appropriate in this case.

Furthermore, "[i]t is well established that a court may raise the issue of preclusion on its own motion, in appropriate cases." Burrell v. Armijo, No. 03-2223, 2006 WL 2045821, *15 (10th Cir. July 24, 2006), and cases cited therein. One situation in which a court may raise res judicata on its own occurs "when [,as here,] both actions were brought before the same court." Kansas City S. Ry. Co. v. Canadian Nat'l/Ill. Cent. R.R., No. 04-30782, 2005 WL 2012356, *3 (5th Cir. Aug. 23, 2005) (quoting Mowbray v. Cameron County, Tex., 274 F.3d 269, 281 (5th Cir. 2001)). Therefore, the doctrine of res judicata was applicable to this case *sua sponte*, and no notice to the Plaintiffs was required.

However, remand orders,[16] and any findings incident to remand orders, generally will not form appropriate bases for the application of res judicata, because remand

---

[15]Of course, whether or not the *Trevino* plaintiffs actually protected those claims is a separate question. What matters for purposes of virtual representation is that the *Trevino* plaintiffs had the proper incentive to protect the Plaintiffs' interests, not whether they engaged in successful efforts to actually protect those interests.

Furthermore, the Court will not question the litigation strategy of the *Trevino* plaintiffs. So long as they had the proper incentive to protect the Plaintiffs' interests, the decision they made regarding which claims to assert is not a proper matter for consideration or review by this Court.

[16]The Court notes that, as of February 18, 2005, remand orders in class action cases, such as this one, are no longer unreviewable. *See* Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2 (2005). That Act does not apply to any case filed before February 18, 2005, however. *See* Patterson v. Dean Morris, L.L.P., 448 F.3d 736, 739, 741 (5th Cir. 2006). Thus, the Act does not apply to this case.

orders ordinarily are not reviewable.[17]  *See* 28 U.S.C. § 1447(d) (2004) (prior to amendment by CAFA); Dawalt v. Purdue Pharma, L.P., 397 F.3d 392, 394, 397 (6th Cir. 2005).  Even so, it does not mean that a court's remand order can never have preclusive effect.

First, although the availability of appellate review is an important factor when determining the preclusive effect of an order, it is not a prerequisite in every circumstance.  Rather, the premise behind the estoppel doctrine is "an underlying confidence that the result achieved in the initial litigation was substantially correct." F.W. Standefer v. United States, 447 U.S. 10, 23 n.18 (1980).  The availability of appellate review is not "an essential predicate of estoppel."  *Id.*; *see also* Johnson Steel Street Rail Co. v. William Wharton, Jr. & Co., 152 U.S. 252, 256–60 (1894).

Second, although a federal court's findings related to subject matter jurisdiction have no preclusive effect on the state court proceedings or on the substance of the claim, they do preclude litigation of those same matters regarding subject matter jurisdiction in a second federal suit on the same claim.  *See* Kansas City S. Ry. Co., 2005 WL 2012356, at *4; Linton v. Airbus Industrie, 30 F.3d 592, 597 n.27 (5th Cir. 1994) (citing Soley v. First Nat'l Bank of Commerce, 923 F.2d 406, 409–10 (5th Cir. 1991)); Oglala Sioux Tribe of the Pine Ridge Indian Reservation v. Homestake Mining Co., 722 F.2d 1407, 1411 (8th Cir. 1983).  Res judicata applies to questions of jurisdiction in the same manner as it applies to other issues.  Thus, a plaintiff may not assert that subject matter jurisdiction exists in a federal court based on grounds which have previously been rejected, dismissed, or waived.

In this case, Plaintiffs expressly disclaimed, in their Motion to Remand the *Trevino* case, any federal claims they may have had.  *Trevino*, No. Civ.A. M-04-377 (Dkt. No. 4, at 3).  Based on that disclaimer, the Court found that there were no federal causes of action and that it did not have subject matter jurisdiction.  *Id.*, 2005 WL

---

[17]This is not to say that *all* remand orders and *all* findings incident to remand are not reviewable.  Under *City of Waco, Tex. v. United States Fidelity & Guaranty Co.*, 293 U.S. 140 (1934), any order which necessarily precedes the remand order, even if included in an opinion with the remand order, is reviewable.

2346950, at *1, *2, *5, *7 n.6, *9.  Plaintiffs now assert federal subject matter jurisdiction based on those same claims.  Dkt. No. 1.  However, the finding of no subject matter jurisdiction precludes the Plaintiffs from asserting those same claims as a basis for jurisdiction.  *See Kansas City S. Ry. Co.*, 2005 WL 2012356, at *4.

Moreover, Plaintiffs' claims were not completely barred.  "The effect of Plaintiffs' waiver of their right to bring federal causes of action during the state court proceedings is that they are barred by the doctrine of res judicata from bringing those claims *in a separate case*."  Dkt. No. 17, at 18 (emphasis added).  Plaintiffs may not bring federal causes of action in this or any other court.  *Id.*  Plaintiffs may, however, apply for leave to amend their petition in the original case in state court.  This requirement, that Plaintiffs seek leave from the state court to assert any federal claims, is the result of the collateral estoppel effect of Plaintiffs' express waiver of any federal claims.

Finally, dismissal of Plaintiffs' federal claims with prejudice was appropriate.  These claims were dismissed with prejudice not based on the merits of the case, but because in the event of *Younger* abstention a federal court can never reach the merits of the case.[18]  *See, e.g.,* Nivens v. Gilchrist, 444 F.3d 237, 247 (4th Cir. 2006) ("Thus, when a district court abstains from a case based on *Younger*, it should typically dismiss the case with prejudice; not on the merits, but instead because the court is denied the equitable discretion ever to reach the merits." (internal citations omitted)).  Moreover, if no federal claim is withheld from a court's decision to abstain from hearing a case, be it based upon *Younger* or *Colorado River* abstention, then a state court case will "end the matter under the rules of res judicata."  Bossom v. Bossom, 551 F.2d 474, 476 (2d Cir. 1976).  Furthermore, dismissal with prejudice is appropriate in this case because of the Plaintiffs' blatant attempt at forum manipulation.  "To protect against forum manipulation, . . . the federal law claim must be dismissed *with prejudice*.  To allow Plaintiffs the potential to reassert that claim in a separate cause of action would clearly represent manipulation of forum for the state law causes of action."  Shelton v. S.

---

[18]For this reason, the Court's decision will not preclude the pending state court case.  *See Kansas City S. Ry. Co.*, 2005 WL 2012356, at *4.

Energy Homes, Inc., 420 F.Supp.2d 579, 583 (S.D. Miss. 2006); *see also* Unida v. Levi Strauss & Co., 986 F.2d 970, 975 (5th Cir. 1993); Eatherton v. N.Y. Life Ins. Co., No. 3:03CV7042, 2003 WL 21478979, *2 n.3 (N.D. Ohio June 17, 2003); Kinabrew v. Emco-Wheaton, Inc., 936 F.Supp. 351, 353 (M.D. La. 1996); Hernandez v. Central Power & Light, 880 F.Supp. 494, 496 (S.D. Tex. 1994). Plaintiffs brought their case in state court and successfully argued for remand after the case was removed. *Trevino*, No. Civ.A. M-04-377 (Dkt. No. 1, Ex. B, Plaintiffs' Fourth Amended Original Petition; Dkt. Nos. 4, 21). Plaintiffs have now become unhappy with the state court proceedings and desire to have this Court assume jurisdiction. Dkt. No. 1. This is a blatant attempt at forum manipulation which will not be condoned. Thus, dismissal of the federal claims with prejudice was necessary and appropriate in this case.

### 3. *Younger* Abstention

Plaintiffs' second general category of alleged errors involves the Court's application of the *Younger* abstention doctrine.[19] Dkt. No. 18, at 11–12. Plaintiffs primarily argue that "*Younger* abstention analysis is inapposite" because this case is not criminal in nature. *Id.* at 11. Plaintiffs also aver, in a footnote, that there are no ongoing proceedings in state court and that there are no important state interests at issue. *Id.* at

---

[19]Prior to presenting their arguments regarding *Younger* abstention, the Plaintiffs proffer an overview of the principles of abstention. Dkt. No. 18, at 10–11. During this analysis, Plaintiffs aver that "the sole issue raised by SWBT's motion to dismiss was whether Plaintiffs' federal claims should be dismissed or stayed in favor of administrative proceedings by the Public Utility Commission of Texas, pursuant to the *Burford* abstention doctrine." *Id.* at 10. Plaintiffs therefore argue that, despite the Court's holding that the issue of whether the case should be stayed in deference to administrative proceedings was not an issue before the Court, "this issue was clearly before the Court and was the only viable issue raised by SWBT's *Burford* argument." *Id.* at 11.

This representation is inappropriate and patently frivolous. Defendants did not seek a stay or dismissal of the case based on administrative proceedings. Rather, Defendant sought a stay or dismissal to provide the Texas Supreme Court with an opportunity to determine whether the PUC has jurisdiction over the case. Dkt. No. 8, at 1–2; Dkt. No. 12, at 2–3. Thus, Plaintiffs mischaracterize the Defendants' motion and the Court's decision.

-18-

11 n.1. These contentions are without merit.

Younger abstention has been applied in a number of civil proceedings. See, e.g., Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 10–11 (1987); Juidice v. Vail, 430 U.S. 327, 334 (1977); Nivens v. Gilchrist, 444 F.3d 237, 241 n.3 (4th Cir. 2006); Carr v. Axelrod, 798 F.Supp. 168, 174 (S.D.N.Y. 1992). Thus, Younger is not inapposite merely because this case does not involve criminal proceedings. In it previous order, the Court held that Younger was appropriate in this case, and the Court reaffirms that holding. Dkt. No. 17, at 14.

In addition, and for the same reason, there are ongoing state proceedings within the meaning of Younger. There is a state court case, referred to frequently by both parties, which involves the same issues as the case sub judice. See, e.g., Dkt. No. 12, at 1. The mere fact that the case is civil, and not criminal, in nature does not remove it from the purview of an ongoing state proceeding under Younger.

Finally, although there are no important state interests implicated in the federal case, there are important state interests in the state court case. Dkt. No. 17, at 13–14. Thus, the proceedings involve important state interests, because the state court case is one of the relevant proceedings. Furthermore, if the Court were to adjudicate the federal claims, its decision would operate as res judicata in the state case. See Allen, 449 U.S. at 94. Thus, any decision by this Court would prevent the state courts from addressing the important state interests involved in the state court case.[20] It is thereby clear that important state interests are involved in these proceedings within the meaning of a Younger analysis. The Court reaffirms its decision to abstain pursuant to Younger.

4. Colorado River Abstention

The final general category in which Plaintiffs allege that the Court committed

---

[20]The Court finds this effect to be particularly problematic. If the Court were to prevent the Texas Supreme Court from making the determination of whether the PUC has jurisdiction in this case, it would render the Texas Supreme Court's stay nugatory and would thereby reflect negatively on the state courts. These are factors which must be considered in a Younger analysis and support the decision to abstain. See Pennzoil Co., 481 U.S. at 13, 14 n.12; Juidice, 430 U.S. at 336 & n.12.

errors of law is in the Court's *Colorado River* abstention analysis. *See* Dkt. No. 18, at 12–15. Plaintiffs proffer an analysis of six factors which they contend prove that the Court had "no legal authority" for dismissing their case. *Id.* at 13–15. Plaintiffs also argue that the inconvenience of the state court proceedings shows that the Court should not have dismissed this case. *Id.* at 15. Once again, Plaintiffs' arguments have no merit.

In a motion for new trial or a motion to alter or amend the judgment, a party must show that the Court committed error or that new evidence has been discovered; the party may *not* merely disagree with the Court's analysis or factual findings and then argue that the Court was wrong. *See* Michael Linet, Inc. v. Village of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005); United States *ex rel.* Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (quoting Hutchinson v. Staton, 994 F.2d 1076, 1082 (4th Cir. 1993)). In this case, the Court conducted a factor analysis, upon which the Court concluded that abstention was appropriate. Dkt. No. 17, at 14–16. Plaintiffs clearly disagree with this conclusion, as is their wont. However, that disagreement does not permit them to argue that the Court should have accepted their analysis and subsequent conclusions, rather than the conclusions at which the Court arrived. *Colorado River* abstention is appropriate in this case. *See id.* at 17.

Furthermore, the adequacy of state court proceedings within the meaning of *Colorado River* is not dependent on how long those proceedings might take. Regardless of how long the state court may take, so long as it has jurisdiction over a plaintiff's federal claims, it is an adequate forum. Thus, whether or not "Plaintiffs would face indefinite stays and appeals while a determination of whether the state court has jurisdiction to hear those claims is made" is irrelevant to the question of whether the state court proceedings are adequate within the meaning of *Colorado River*. Dkt. No. 18, at 15. In this case, although a stay has been imposed on the state court proceedings, the court does have jurisdiction. Therefore, the state court provides an adequate forum for the adjudication of the Plaintiffs' federal claims.

## B. Errors of Fact

Plaintiffs aver that the Court erred when it made the factual finding "that the *Trevino* plaintiffs waived any federal causes of action based on Defendant SWBT's conduct." Dkt. No. 18, at 15–16. In support of this contention, Plaintiffs argue that they did not permanently waive their federal claims but merely clarified their intent to rely on state law claims in state court, that it is unnecessary for a plaintiff seeking remand to waive any federal remedies, and that the FCA's savings clause permits Plaintiffs to bring both state and federal claims. *Id.* at 16–22.

The Court reaffirms its holding. Plaintiffs did not merely clarify that they were relying solely on state law claims. In their petition, Plaintiffs clearly stated that they were expressly disclaiming federal remedies for SWBT's conduct. *Trevino*, No. Civ.A. M-04-377 (Dkt. No. 1, Ex. B, Plaintiffs' Fourth Amended Original Petition, at 7 (emphasis added)) ("Plaintiffs hereby *expressly disclaim* any remedies under federal law they may have for these violations."). This statement is not ambiguous, nor is it in need of interpretation. Thus, the Court has no need to look to external sources to interpret the meaning of this statement. *See, e.g.*, Bedroc Ltd. v. United States, 541 U.S. 176, 183 (2004). Nonetheless, even if the Court considers Plaintiffs' other filings, those filings are either ambiguous or actually support the finding that Plaintiffs disclaimed any federal claims. Specifically, in their motion to remand, Plaintiffs state: "Plaintiffs *expressly disclaimed* any remedies under federal law they may have for this conduct," and "In spite of Plaintiffs' *express waiver* of any federal claims . . .." *Trevino*, No. Civ.A. M-04-377 (Dkt. No. 4, at 3). Through these statements, Plaintiffs specifically, affirmatively waived any federal remedies they may have had. Furthermore, the language employed was clearly intended as a permanent, and not a temporary, waiver.[21] Although waiver of federal claims is not a prerequisite to obtaining remand,

_____

[21]Plaintiffs did not state that they were expressly disclaiming federal remedies in the state case with restrictive terminology, such as "only" or "for now," or with any other reservation or condition. Instead, they made an unconditional disclaimer of federal remedies. *See Trevino*, No. Civ.A. M-04-377 (Dkt. No. 1, Ex. B, Plaintiffs' Fourth Amended Original Petition, at 7; Dkt. No. 4, at 3).

the Plaintiffs did waive any federal causes of action they might have had.  Furthermore, the FCA's savings clause does not provide the Plaintiffs with a reprieve from this waiver.  *See* 47 U.S.C. § 414.  That clause merely states that the FCA does not supersede prior remedies; it does not prohibit a plaintiff from waiving claims or permit a plaintiff to separate one case into multiple judicial proceedings in multiple forums.[22]  *Id.*  Thus, the Court will give effect to Plaintiffs' own statements and find that any federal claims were in fact waived.  *Cf. England*, 375 U.S. at 418.

### C. Judicial Estoppel

In its Opinion & Order of July 18, 2006, the Court alluded to, but did not specifically discuss, the doctrine of judicial estoppel.[23]  Dkt. No. 17, at 16–17.  At this time, it would be beneficial to discuss this doctrine and apply it to this case.

Judicial estoppel is a discrete doctrine which prevents a party from asserting a position in a legal proceeding which is contrary to a position previously taken by that party in the same or a similar proceeding.  *See* Hall v. GE Plastic Pac. PTE Ltd., 327 F.3d 391, 396 (5th Cir. 2003) (citing Ergo Science, Inc. v. Martin, 73 F.3d 595, 598 (5th Cir. 1996)).  According to the Supreme Court, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position."  Davis v. Wakelee, 156 U.S. 680, 689 (1895).

"The policies underlying the doctrine include preventing internal inconsistency, precluding litigants from playing fast and loose with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment."  Coastal Plains, Inc. v. Mims, 179 F.3d 197, 206 (5th Cir. 1999) (quoting United States v.

---

[22]The FCA's savings clause in no way abrogates the doctrine against claim-splitting or the procedural rules related to joinder of claims.

[23]The Court did not specifically state the term "judicial estoppel."  However, the doctrine is, in essence, a subspecie of res judicata.  *See, e.g.,* WRIGHT, MILLER, & COOPER, *supra* note 6, at § 4477 (discussing judicial estoppel under the heading "Other Topics" within the overall heading of "Res Judicata").

McCaskey, 9 F.3d 368, 378 (5th Cir. 1993)). Because the doctrine is intended to protect the court, and not the parties, the decision of whether to invoke the doctrine is within the court's discretion. *See* New Hampshire v. Maine, 532 U.S. 742, 750 (2001). Furthermore, detrimental reliance by the opposing party is not required. *Coastal Plains, Inc.*, 179 F.3d at 210. In fact, there are only two requirements for application of judicial estoppel in the Fifth Circuit: the party to be estopped must be asserting a position clearly inconsistent with its previous position and "that party must have convinced the court to accept that previous position." *Id.* at 206. The inconsistent positions may be asserted by an attorney, and they may be asserted in pleadings, responses, motions, or orally before the Court. *See Hall*, 327 F.3d at 396. Finally, judicial estoppel does not require a decision on the merits in the first case. *See Coastal Plains, Inc.*, 179 F.3d at 206. "Rather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Id.* (quoting Reynolds v. Comm'r of Internal Revenue, 861 F.2d 469, 473 (6th Cir. 1988)).

In this case, the Plaintiffs clearly asserted the position that federal jurisdiction did not exist, and that this Court therefore did not have subject matter jurisdiction. *Trevino*, No. Civ.A. M-04-377 (Dkt. No. 4). In support of this position, Plaintiffs expressly disclaimed any federal claims they might have had. *See id.* (Dkt. No. 4, at 3). The Court adopted that disclaimer in its Opinion and Order remanding the case to state court. *See id.*, 2005 WL 2346950, at 1–2, 3, 9, 12 n.6, 17. Plaintiffs now argue that federal jurisdiction over this case does exist, and that this Court does have subject matter jurisdiction. Dkt. Nos. 1, 12, 18. Plaintiffs rely on the same federal claims as were disclaimed in the *Trevino* case to establish this jurisdiction. *Compare* Dkt. No. 1, *with Trevino*, No. Civ.A. M-04-377 (Dkt. No. 1, Ex. B, Plaintiffs' Fourth Amended Original Petition). Plaintiffs also contend that they did not permanently disclaim these claims. Dkt. No. 12, at 16–19. The contentions in the two cases are diametrically opposed to each other. Thus, the arguments are in clear conflict and this Court adopted Plaintiffs' original contentions, thereby making application of the doctrine of judicial estoppel appropriate in this case. Accordingly, the Court invokes its discretion

-23-

to apply the doctrine and estop the Plaintiffs from asserting the previously disclaimed federal claims as a basis for federal jurisdiction over this case.

## IV.   Contempt and Rule 11 Sanctions

Throughout the motion, Plaintiffs' attorney, John R. Griffith,[24] makes numerous assertions and representations which are both disrespectful and accusative of the Court and which are not warranted by existing law or supported by factual evidence.  In addition to being conduct which is inappropriate and unbecoming of an officer of the Court, these statements and actions cross the line from ethical to unethical conduct. Furthermore, to compound the situation, counsel was already put on notice that he was near the border between ethical and unethical conduct.  *See* Dkt. No. 17, at 16 ("These actions approach the border between ethical and unethical conduct . . . .").  Therefore, the Court will evaluate counsel's conduct to determine if counsel should be held in contempt, sanctioned, or both.

### A. Improper Statements and Mischaracterizations

Plaintiffs' counsel advanced several statements which plainly disrespect the Court and/or accuse the Court of misconduct.  Even in the introduction to Plaintiff's motion, Plaintiffs' counsel states that the Court's previous order "wrongfully precludes millions of SWBT customers from ever bringing viable causes of action against SWBT." Dkt. No. 18, at 1.  A similar averment is made a few pages later, when the motion says: "This Court's attempt to deprive Plaintiffs of their federal claims through the erroneous application of res judicata, [sic] is precisely the type of procedural trap the Supreme Court intended to avoid by adopting the bright-line test in *England*."  *Id.* at 6.  Plaintiffs also attempt to bring the Court into disrepute: "Although the Court's opinion cited *Colorado River*, it did not heed its teachings," and "[t]he Court abdicated its unflagging duty by abstaining from hearing Plaintiffs' federal claims."  *Id.* at 10, 15.  Finally, when

_____

[24]Plaintiffs are also represented by Joseph M. Gourrier and Roy J. Elizondo, III. However, only Mr. Griffith signed the motion *sub judice*.

discussing the *Younger* doctrine, counsel implies that the Court is not "sophisticated," counsel refers to the Court's analysis as "the Court's purported Younger [sic] analysis," and counsel states that "[t]he court [sic] admits that the federal case does not implicate important state interests." *Id.* at 11 & n1.

In addition, Plaintiffs' counsel engages in blatant mischaracterizations of the facts of the case, of what has happened in the case, and of what the Court held. Counsel argues that "the Court erred in determining that the Plaintiffs in this case were adequately represented in the *Trevino* case because counsel represented plaintiffs in both actions." *Id.* at 7. Immediately thereafter, counsel also mischaracterizes the situation of his clients: "Indeed, the *Trevino* plaintiffs had no incentive to protect the federal interests of the Plaintiffs because they were not bringing any federal claims in the state court action." Dkt. No. 18, at 7. Finally, there is another mischaracterization implicit in that statement, which counsel later asserts outright: "[O]ther plaintiffs have now chosen to bring federal claims."[25] *Id.* at 15.

## B. Contempt

The Court finds that the statements discussed above are contemptuous per se. *See* United States v. Schiffer, 351 F.2d 91, 94 (6th Cir. 1965). Statements and assertions which directly attack the integrity of the Court and are intended as an affront to the Court cannot be permitted or ignored. *In re* Gustafson, 650 F.2d 1017, 1019, 1020 (9th Cir. 1981); *Schiffer*, 351 F.2d at 94. Therefore, although this Court does not relish its task and finds it regrettable, it is necessary for the Court to hold Plaintiffs' counsel in contempt.

"A court of the United States [has the] power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [m]isbehavior of any person in its presence or so near thereto as to obstruct the

---

[25]Irrespective of whether the plaintiffs in this case are the same as those in *Trevino*, counsel has specifically referred to them as both the same and different. *Compare id., with* Dkt. No. 12, at 1. Thus, one of those representations must be incorrect.

administration of justice." 18 U.S.C. § 401. This does not mean that the action in question must occur in open court. The contemptuous matter occurs in the court's "presence" even when it appears in a pleading. Kunik v. Racine County, Wisconsin, 946 F.2d 1574, 1583 (7th Cir. 1991). Furthermore, a court "may summarily punish a person who commits criminal contempt" so long as the contumacious conduct occurred in the court's presence and was seen or heard by the judge.[26] FED. R. CRIM. P. 42(b); see United States v. Wilson, 421 U.S. 309, 316–17 (1975); Gustafson, 650 F.2d at 1021; see also Kunik, 946 F.2d at 1583 ("First, although the contemptuous matter was in a pleading and not in open court, no authority appears to limit the judge's sanctioning authority to what he hears or sees in person, rather than through a pleading.").

In this case, the statements and assertions described above were made in a motion to the Court.[27] See Dkt. No. 18. Furthermore, this motion was filed in response to, and apparently as an attack upon, the Court's Opinion & Order of July 18, 2006, in which the Court put counsel on notice that he was dangerously close to the border between ethical and unethical conduct. See Dkt. No. 17, at 16. These statements were intended as an affront to the dignity and decorum of the Court and "constituted a deliberate and wilful attack upon the administration of justice." Schiffer, 351 F.2d at 93. Although counsel may not agree with the Court or one of its rulings, counsel "never has the right to let his temper, zeal, or his intention lead him into disrespectful, accusative language to the court." MacInnis v. United States, 191 F.2d 157, 159 (9th Cir. 1951). Counsel also may not resist a court's ruling or insult the judge. Levine v. Lawrence, No. 03-CV-1694 (DRH ETB), 2005 WL 1412143, *4 (E.D.N.Y. June 15, 2005). "If [counsel] felt that a ruling was erroneous, he had an adequate remedy to review it by way of appeal." Schiffer, 351 F.2d at 94. Under no circumstances may he make "unfounded accusations reflecting on the dignity, integrity and impartiality of the Court. This

---

[26]There is no requirement that the conduct be committed in the presence of a jury. See Schiffer, 351 F.2d at 94.

[27]The Court certifies that it saw the contemptuous conduct. The conduct consisted of statements and assertions contained in a motion to the Court, which is a docketed filing for which counsel is responsible for the contents.

-26-

conduct cannot be countenanced in a Federal Court." *Id.*

Of course, "a rule of caution must prevail where the contempt charged has in it the element of personal criticism or attack upon the judge." *MacInnis*, 191 F.2d at 159. Nonetheless, the Court concludes that the summary imposition of contempt is appropriate in this case for two reasons.  First, the conduct engaged in here was clearly contemptuous and occurred after counsel was put on notice that he was at the precipice between ethical and unethical conduct.  Furthermore, most of the improper statements are not personal attacks upon the Court,[28] but consist of general attacks on the administration of justice.  Second, and more importantly, the conduct at issue was "calculated to provoke and to bring undue pressure upon the Court in the making of" its ruling regarding Plaintiffs' motion for new trial and to alter or amend the judgment. *Schiffer*, 351 F.2d at 94.  It is clear that counsel attempted to coerce the Court into altering its previous Opinion & Order by using inflammatory language and by launching attacks upon the administration of justice in this case.  This conduct, however, cannot be counseled or tacitly approved by the Court.  Therefore, although the Court feels that its conclusion is unfortunate, the Court can only conclude that, if the judicial function and the administration of justice is to be upheld, Plaintiffs' counsel must be held in contempt.  Thus, the Court holds Plaintiffs' counsel in contempt of court and orders counsel to pay a fine of $500.

### C. Rule 11 Sanctions

The Court also finds that Plaintiffs' motion contains numerous assertions and arguments which violate Federal Rule of Civil Procedure 11.  Rule 11 states:

> By presenting to the court . . . a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

---

[28]There is one notable exception to this, in the statement which implies that the Court is not sophisticated. *See* Dkt. No. 18, at 11.  However, this statement merely involves an implication, is not highly offensive, and would not even raise the specter of a contempt holding by itself.

-27-

. . .

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED. R. CIV. P. 11(b).  Plaintiffs' motion contains numerous violations of these three provisions.

The section of Rule 11 which Plaintiffs' motion most frequently violates is section (b)(2).  Plaintiffs' arguments regarding the *England* doctrine, res judicata, *Younger* abstention, and *Colorado River* abstention all violate this section of Rule 11.  Plaintiffs' assertion that the Court's ruling would nullify the savings clause of the FCA also constitutes a violation of this section.  Each of these arguments presents a legal contention which is not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or for the establishment of new law.

Plaintiffs' motion also violates Rule 11(b)(3) several times.  Plaintiffs' factual assertions related to their express disclaimer of any federal claims and of their intent to assert only state law claims establish violations of this section.  Furthermore, the mischaracterizations discussed above, *see supra* § IV.A, all constitute violations of this section, because all of these contentions involve factual allegations which are not supported by any evidence adduced, or likely to be developed, in the case.

Finally, Plaintiffs' denial of the fact that they expressly disclaimed any federal claims or remedies amounts to a violation of Rule 11(b)(4).  This denial is not warranted by the evidence and was not, and could not be, identified as based on a lack of information or belief.

Therefore, because of these violations, Plaintiffs' counsel will be ordered to show cause why he should not be sanctioned for presenting these contentions and assertions to the Court.

## V.    Conclusion

Based on the foregoing, the Court **DENIES** Plaintiffs' Motion for New Trial and Motion to Alter or Amend Judgment.  Dkt. No. 18.

The Court also **FINDS** that, as a result of the improper statements and mischaracterizations of the facts, proceedings, and holdings that Plaintiffs' counsel, John R. Griffith, made in this case, Mr. Griffith is in contempt of court and **ORDERS** him to pay a fine of $500 into the Court registry.

Finally, the Court **ORDERS** Plaintiffs' counsel to appear on January, 17, 2007, at 10:00 a.m. to show cause why he should not be sanctioned for violating Federal Rule of Civil Procedure 11.


DONE at Brownsville, Texas, this 5th day of December, 2006.

Hilda G. Tagle
United States District Judge